UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CONSTANCE RADOUS, | Case No. 1:12-CV-319 |
| Plaintiff, | Judge Dan Aaron Polster |
| vs. | **MEMORANDUM OF OPINION AND ORDER** |
| EMERITUS CORPORATION, | |
| Defendant. | |

Vincenzina Pontoni lived at Emeritus Corporation's assisted-living facility, Brookside Estates, until she died there on the evening of December 28, 2010. She was found dead in a spa tub at 10:20 p.m, over an hour after she was left unattended by a resident aide.

Plaintiff Constance Radous, the personal representative of Mrs. Pontoni's estate, has sued Emeritus for medical malpractice, wrongful death, breach of contract, and punitive damages. The Court must now rule on Defendant's motion for summary judgment, (Doc. # 45), which presses three arguments:

- Plaintiff's breach-of-contract claim should be dismissed because it is subsumed by the medical-malpractice claim.

- The wrongful-death and medical-malpractice claims should be dismissed because Plaintiff has failed to provide proper expert testimony in support of three elements: duty, breach, and causation.

- Plaintiff has failed to justify an award of punitive damages because she cannot demonstrate with clear and convincing evidence that Defendant acted with malice, fraud, oppression, or insult, as required under Ohio Revised Code § 2315.21.

Plaintiff concedes the first argument; her breach-of-contract claim is therefore dismissed. But the

Court must decide the remaining arguments.

## I. Background

In late April 2010, Mrs. Pontoni decided it was time to move into an assisted-living facility. With her daughter, Marcia, she visited Emeritus facilities in California and Ohio. On April 19, 2010, they visited an Emeritus facility in California where an initial assessment of Mrs. Pontoni was conducted. A second assessment was conducted at Brookside Estates on April 29, 2010.

Mrs. Pontoni would only move into a facility that could provide bathing assistance. "And the key thing was that there needed to be a place where [she] could take a bath and somebody could keep an eye on her." (Doc. # 46-4 at 7). Brookside Estates said it could oblige. Paragraph 2G of the resident contract reflects this accommodation:

> Bathing/Showering/Tub
> Requires standby assistance and/or assistance (help in & out of shower, turning on or off water, upper and lower extremities)
> Brookside Estates will be responsible
> Standby for safety.

(Doc #: 46-1.)

Another of Mrs. Pontoni's daughters, Maggie, was assured that bathing assistance would be available and that a staff member would be present during each of her mother's baths. The staff showed Maggie the spa room; she saw a tub on one side of the room and a sitting area for the staff on the other, the two areas separated by a curtain drawn across the room.

With these assurances, Mrs. Pontoni moved into the facility on May 5, 2010. She was charged, and paid, extra each month for the spa-supervision service—until December 28, 2010.

At approximately 8:30 p.m., the resident aide brought Mrs. Pontoni into the spa room for her evening bath. She helped remove Mrs. Pontoni's clothes, climb into the tub, and fill the tub with water. She placed a call button on the door to the tub for Mrs. Pontoni's use. She then left

-2-

Mrs. Pontoni in the spa room alone.

The door to the spa room locked automatically after it closed. The only ones with keys to the spa room were the staff persons. And that night, there were only two staff members on duty: one nurse and one resident aide for all of the unit's 20 residents.

The resident aide returned 20 minutes later with Mrs. Pontoni's night clothes and a towel and then left her alone once more. At about 10:20 p.m., after an hour's passing, the resident aide realized she had not heard from Mrs. Pontoni. When she entered the spa room, she found Mrs. Pontoni dead underwater, in a pool of her own feces, the water still running.

## II. Standard of Review

Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must examine the evidence and draw all reasonable inferences in favor of the nonmoving party. *Jones v. Potter*, 488 F.3d 397, 402–03 (6th Cir. 2007). If, after reviewing the record as a whole, a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

### A. Medical-Malpractice and Wrongful-Death Claims

Defendant makes two arguments in favor of dismissing the medical-malpractice and wrongful-death claims.[1] Defendant's first argument is that Plaintiff has failed to produce a

---

[1]The Court agrees with Defendant that the issues of duty, breach, and causation are identical for the medical-malpractice and the wrongful-death claims. (Doc. # 45-1 at 6).

-3-

qualified expert to establish duty and breach.

The normal rule is that a plaintiff asserting a claim of medical-malpractice, or a derivative wrongful-death claim, must present expert testimony to prove duty—the applicable standard of care recognized by the medical community—and breach—the defendant's negligent failure to render treatment in conformity with the applicable standard of care. *Torres v. Getzinger*, 2012-Ohio-5613 ¶ 22 (Ohio App. 7 Dist.) (citation omitted).

To prove these elements, Plaintiff offers the testimony and expert report of Marge Nanartowicz, R.N., B.C. Nurse Nanartowicz opines that: patients should never be left alone in an environment where they cannot get assistance; Mrs. Pontoni would not have been able to get out of the tub without help; the staffing at the facility was sub-standard; and their lack of training was apparent based on the employees' statements. Nanartowicz's opinions are based on her education as a Certified Gerontological Registered Nurse, and her twenty-three years' experience working in assisted-living facilities, twelve of which were spent in facilities with spa baths. The Court finds that Ms. Nanartowicz is qualified to offer an opinion about the standard of care and breach of that standard in assisted-living facilities in Ohio.

In any event, Ms. Nanartowicz's testimony is unnecessary because this case meets the exception to the normal rule above. According to that exception, no expert testimony is required in a medical-malpractice claim on the issues of duty and breach when the defendant's lack of care "is so apparent as to be within the comprehension of laymen, and requires only common knowledge and experience for an understanding of it." *Cunningham v. Children's Hosp.*, 2005-Ohio-4284 ¶ 19 (Ohio App.10 Dist.) (citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 130 (1976)). *See also Jones v. Hawkes Hosp.*, 175 Ohio St. 503 (1964); *Ramage v. Central Ohio Emergency*

*Serv., Inc*., 64 Ohio St.3d 97 (1992).

Plaintiff's theory is that Defendant breached its duty of care by leaving an infirm resident alone in a spa tub in a locked room for well over an hour late at night, provided its staff deficient training—one day of "orientation" followed by three days of shadowing and no training on how to give or supervise resident baths, and had an inadequate number of staff members on duty the night in question—two for 20 residents.  A jury does not have to accept Plaintiff's theory of negligence, but it can certainly comprehend the theory without help from an expert.

Defendant's second argument is that Plaintiff's causation expert, Dr. Werner Spitz, has failed to pinpoint the time of Mrs. Pontoni's death.  The normal rule in a medical-malpractice case is that expert testimony is required on the issue of causation, just as it is on duty and breach.  *Torres*, 2012-Ohio-5613 ¶ 22.  There is no reason to depart from this rule.

Dr. Spitz is a board-certified anatomic and forensic pathologist who was a medical examiner—a position from which he retired.  He now practices forensic pathology privately.  Having reviewed Dr. Spitz's resume and deposition testimony, the Court finds he is well qualified to determine the cause of death and has explained in detail the reason for his conclusion that Mrs. Pontoni died as a result of drowning.

Defendant's expert disagrees with Dr. Spitz's conclusion, making much of the fact that Dr. Spitz refuses to pinpoint the exact time of death—a matter Dr. Spitz freely admits.  But the Court knows of no basis in law or fact—and Defendant has not supplied one—for excluding an expert's opinion solely because he cannot pinpoint the precise time of death.  The competing experts make causation a question for the jury to decide.

### B.  Punitive Damages

Finally, Defendant moves for summary judgment on the grounds that there is no evidence upon which a jury could base an award of punitive damages. Punitive damages may be awarded when the plaintiff proves, by clear and convincing evidence, that "the actions or omissions of the defendant demonstrate malice or aggravated or egregious fraud. . . ." O.R.C. § 2315(C)(1). Malice may be found where a defendant exhibits "a conscious disregard for the rights and safety of other persons that has a great probability of causing harm." *Malone v. Courtyard by Marriott L.P.*, 74 Ohio St. 3d 440, 446 (1996). This "requires the party to possess knowledge of the harm that might be caused by his behavior." *Id.*

The Sixth Circuit recently held that, because malice is difficult to prove other than viewing conduct and the surrounding circumstances, "malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful, or gross." *Freudeman v. Landing of Canton, Emeritus Corp.*, 702 F.3d 318, 330 (6th Cir. 2012) (quoting *Villella v. Waikem Motors, Inc.*, 45 Ohio St. 3d 36, 37 (Ohio 1989) (quotations omitted)). The Court in *Freudeman* found support for punitive damages where, as a result of a nurse's haste, due to under-staffing, residents repeatedly received the wrong medication. 702 F.3d at 330-31.

In this case, there is plenty of evidence from which an inference of malice arises. Mrs. Pontoni contracted for standby bathing assistance. (Broeker Dep., P. 27-28, L. 24-25). Depositions of Brookside Estates employees show that they were not made aware of the requirement of standby assistance for Mrs. Pontoni. (Broeker P. 28, L. 21-25; McCauley Dep. P. 24, L. 21-25). There is evidence that there was no specific training policy for bathing. (McCauley, P. 63, L. 13-19; Broeker, P. 24-25, L.24-25, 1-2, & 17-20). Further, there is evidence that Brookside Estates employees were unaware of the dangers associated with leaving a resident in a bath for longer than an hour and a half. (Broeker, P. 32 & 33, L. 22-25 & 1-5).

Add to that the evidence mentioned in the previous section of this opinion and you have a genuine issue of material fact whether Defendant's conduct was reckless or wanton.

### IV. Conclusion

For the reasons to follow, the Court **DENIES** the Motion as to the wrongful-death, medical-malpractice, and punitive-damages claims, and **GRANTS** the Motion as to the breach-of-contract claim. Count III is therefore **DISMISSED**.

**IT IS SO ORDERED.**

      **S/Dan Aaron Polster**
**Dan Aaron Polster**
**United States District Judge**

March 27, 2013

Case: 1:12-cv-00319-DAP Doc #: 48 Filed: 03/27/13 8 of 8. PageID #: 753